STATE OF INDIANA      )          PORTER SUPERIOR/CIRCUIT COURT
                      ) SS:
COUNTY OF PORTER     )          CAUSE NO. _____

KYLE A. KAZMIERCZAK,           )
                               )
      Plaintiffs,                   )
                               )
      v.                            )
                               )
DUANE PARRY, Individually and in his     )
Capacity as Mayor; and             )
CITY OF MICHIGAN CITY, INDIANA     )
                               )
      Defendants.               )

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND JURY TRIAL DEMAND

Plaintiff Kyle A. Kazmierczak ("Mr. Kazmierczak"), by counsel, for his Complaint for Damages and Injunctive Relief and Jury Trial Demand against Defendants Duane Parry, Individually and in his Official Capacity ("Parry") and the City of Michigan City, Indiana ("Michigan City") states and alleges as follows:

### I.    PRELIMINARY STATEMENT

1.    For over twenty-two years, Mr. Kazmierczak dutifully served his community in heroic fashion as a local firefighter in his hometown of Michigan City, Indiana. It was his boyhood dream job. This case arises as a result of Defendant Parry's intentional, callous, reckless, and malicious conduct in publishing defamatory and untrue statements about Mr. Kazmierczak's reputation which, among other things, wrongfully and falsely accused him of being associated or involved with criminal conduct by his fellow firefighters, and misconduct in his trade and profession. Defendant Parry, the Mayor of Michigan City, intentionally issued a press release asserting that Mr. Kazmierczak was "removed"/"fired" for his handling of an

EXHIBIT A

incident involving off-duty firefighters which, in turn, communicated to the public that Mr.

Kazmierczak knew about or was involved with the incident or committed misconduct in his

profession, all of which is absolutely false.  Defendant Parry undertook his actions knowing his

statements would be widely published as a result of his position as Mayor.  In fact, his statements

were submitted to the AP wire and picked up by numerous written, internet-based and television

news outlets across the Midwest, which included the headlines that Mr. Kazmierczak was "fired"

– when he was not, and that he mishandled an investigation – when he did not.  These published

statements were false when uttered or made with reckless disregard for the truth and reputation

of Mr. Kazmierczak.

To compound the damages and injuries caused by Defendant Parry's intentional and

unlawful acts of publishing false information, he continued to allow it to be perpetuated, in

article after article that continued to be published and reference Mr. Kazmierczak well over a

year later, without Defendant Parry ever issuing a follow-up press release, retraction,

clarification, or correction of the previously uttered false information.  The press published the

news articles expressly referencing that the information was supplied by Defendant Parry.   Mr.

Kazmierczak seeks damages and other relief to remedy the injuries caused by Defendants Parry

and Michigan City, including a retraction of the false and misleading information published by

Defendants.

## II.    PARTIES

2.    Plaintiff Mr. Kazmierczak is a resident and citizen of Porter County, Indiana.

3.    Defendant Parry is presently the elected Mayor of Michigan City and a resident

and citizen of LaPorte County, Indiana.  All of Defendant Parry's acts were done in the course

and scope of his employment with and in his executive public official position as the Mayor of

Michigan City. In the alternative, in the unlikely event that Defendant Parry's acts are determined by the Court to be outside of his scope or responsibilities and/or denies vicarious, Respondeat Superior or municipal liability, then Mr. Kazmierczak pleads in the alternative that Defendant Parry remains personally liable.

4.      Defendant Michigan City is an incorporated municipality, located in LaPorte County, Indiana and holds the designation of a second-class city under Indiana law.

### III.      JURISDICTION AND VENUE

5.      This Court has jurisdiction over the parties, and the subject matter pursuant to its power of general jurisdiction.

6.      Venue is properly in Porter County pursuant to Indiana Trial Rule 75 (A)(5) as the county where Mr. Kazmierczak, an individual plaintiff resides, and because a governmental organization, Michigan City, is included as a defendant.

### IV.      TORT CLAIM COMPLIANCE

7.      Without admitting or conceding the application of Indiana's Tort Claim Notice Act ("ITCA"), Mr. Kazmierczak has fully, completely, and substantially complied with the notice requirements of the ITCA.

8.      On or about April 29, 2021, Mr. Kazmierczak provided notice, and on or about February 10, 2022, Mr. Kazmierczak provided a supplemental notice to Defendants Parry and Michigan City pursuant to the ITCA ("Notices").  A true and accurate copy of the Notices are attached as Exhibits 1 and 2, hereto.

9.      Defendants Parry and Michigan City received the Notices.

10.      Defendants Parry and Michigan City tendered the Notices to the Michigan City Council.

11.     Defendants Parry and Michigan City tendered the Notices to their insurance carrier.

12.     The Notices were served on and received by the Michigan City Council.

13.     The Notices were served on and received by City Attorney for Michigan City.

14.     Defendants were put on notice, or substantially put on notice, and had knowledge of Mr. Kazmierczak's claims by virtue of his Notices.

15.     Defendants Defendant Parry and Michigan City never responded to the Notices.

## V.     GENERAL FACTUAL ALLEGATIONS

### Mr. Kazmierczak's Role on the Michigan City Fire Department

16.     Mr. Kazmierczak was hired by the Michigan City Fire Department ("MCFD") on September 7, 1999.

17.     For over two decades, Mr. Kazmierczak proudly served Michigan City as a public servant in many positions and roles during his lifetime, including as a lifeguard, firefighter, fire department instructor, and fire department marshal.

18.     As a result of his loyalty, hard work and dedication to public service as a Michigan City firefighter, Mr. Kazmierczak has enjoyed an excellent reputation in his community and profession and has been publicly recognized for his exceptional efforts as a representative of the MCFD and community.

19.     Mr. Kazmierczak appeared in various news articles about his service and positive reputation in the community.

20.     Mr. Kazmierczak served in the administrative offices under prior Fire Chiefs during the years of 2008 to 2012 as fire marshal (Mayor Oberlie), from June 2015 to March 2019 (Mayor Meer) as fire marshal, from March 2019 through January 2020 as training officer (Mayor

4

Meer).  Thus, Mr. Kazmierczak served in appointed positions for five years under Mayor Meer's term.

<u>**Defendant Parry Becomes Mayor of Michigan City**</u>

21.     On November 5, 2019, Defendant Parry was elected the Mayor of Michigan City.

22.     Following the election, Defendant Parry replaced a number of key positions within the Michigan City government, including the Fire Chief position. According to Michigan City Ordinance ("MC Ordinance") Code § 54-177, the Mayor appoints the Fire Chief.

23.     At the time Defendant Parry was elected, Mr. Kazmierczak had tested for and earned the rank of Captain the second highest merit rank only to Assistant Chief which is limited to a select number of individuals.

24.     Following Defendant Parry's election, Mr. Kazmierczak was an obvious candidate for Fire Chief due to his years of experience, and more specifically his years of experience in the administrative offices of the MCFD and serving a number of prior Fire Chiefs.

25.     Upon information and belief, Defendant Parry was swayed by outside influencers and/or campaign donors to not consider, offer, or select Mr. Kazmierczak for the Fire Chief position.

26.     Indeed, Defendant Parry offered the Fire Chief position to a number of individuals whom, upon information and belief, declined the promotion, with a number of those same candidates offering that Mr. Kazmierczak seemed to be a good or better candidate.

27.     Eventually, Defendant Parry offered the Fire Chief position to Craig Krivak, who held the rank of Lieutenant at that time.

28.     The Mayor does not have the power to select or remove the MCFD Deputy Fire Chief.

29.     According to MC Ordinance Code § 54-178, the Fire Chief has the sole power and authority to appoint the Deputy Fire Chief.

30.     Much to the Mayor's surprise and dismay, the newly appointed Chief/Lt. Krivak selected Mr. Kazmierczak, who held the higher rank of Captain compared to Krivak's rank at that time, to serve as Krivak's Deputy Fire Chief.

31.     This infuriated Defendant Parry because, upon information and belief, Defendant Parry's desire and instruction to not have Mr. Kazmierczak in the administrative offices, as a politically motivated decision, was circumvented by Krivak's decision to use his authority and powers to appoint Mr. Kazmierczak which usurped and circumvented Defendant Parry's objective.

32.     As a result, Krivak and Mr. Kazmierczak were highly scrutinized and subjected to Defendant Parry's retaliation, politically motivated decision-making, and bitter and unprofessional attitude as they attempted to fulfill their job responsibilities for Michigan City.

33.     Defendant Parry has become known for his irrational, retaliatory and unprofessional conduct during his tenure as Mayor.

34.     For example, shortly after his actions against Krivak and Mr. Kazmierczak, Defendant Parry issued a press release targeting the Police Chief. After lawful protests and debate occurred following this press release, Defendant Parry was caught making racially centered and unprofessional remarks about local black pastors following their concern about Defendant Parry's press release concerning the charity efforts by the current Police Chief.  *See*, https://www.wndu.com/2021/03/10/michigan-city-mayor-facing-backlash-for-racially-insensitive-remarks-in-voicemail/

35.     During his tenure, Defendant Parry has been publicly reprimanded about his

unprofessional behavior by the City Council for Michigan City on more than one occasion and was called up for a vote of no confidence.

36.     In March of 2021, the City Council for Michigan City unanimously passed a resolution asking Defendant Parry to resign.

37.     Most recently, on October 27, 2022, Defendant Parry was charged with Leaving the Scene of an Accident, a Class B Misdemeanor, following an investigation and police report by the Indiana State Police.

<u>**November 5, 2020 Off-Duty Firefighter Incident**</u>
<u>**Not Involving Mr. Kazmierczak**</u>

38.     On November 5, 2020, a number of off-duty firefighters gathered at the house of a veteran firefighter, at 111 Earl Road, Michigan City, Indiana ("Residence") following an on-duty fire event the previous evening which continued into the early morning of November 5, 2020.

39.     Krivak and Mr. Kazmierczak were not invited to, previously apprised of, or partake in the off-duty gathering.

40.     The off-duty firefighters met together at the Residence for the purpose of commemorating the first fire of a rookie firefighter.

41.     On November 5, 2020, Krivak and Mr. Kazmierczak were on duty and present in the MCFD's administrative offices.

42.     While on-duty and during their shift that day, Krivak and Mr. Kazmierczak heard an emergency call, which they normally monitored, for an unconscious person at an address they recognized as belonging to a fellow firefighter.

43.     Following the emergency call, Krivak and Mr. Kazmierczak learned that fellow firefighter, Captain John Mellen, had reportedly lost consciousness and was the subject of the emergency call by first responders.  Mellen was transported by ambulance from the Residence to

7

the hospital.

44.     Thereafter, scarce information started to emerge in a very generic sense simply that there was some sort of gathering at the Residence.

45.     Late in the afternoon on November 5, 2022, Krivak was informed by Mark Swistek, a current Michigan City Police Department ("MCPD") police officer and former Chief, that the police department had received a report about an altercation at the Residence between several off-duty firefighters, including his nephew, Austin Swistek, who was also a fellow firefighter.

46.     On November 5, 2020, Krivak was instructed that the MCPD was handling the investigation, and that Krivak was to take no further action with respect to investigating the incident.

47.     Upon information and belief, following MCPD taking jurisdiction over the incident at the Residence and instructing the MCFD to take no action or undertake an investigation of its own, the MCPD reported the situation to the Indiana State Police Department ("ISP").

48.     Krivak and Mr. Kazmierczak were also contacted thereafter by the ISP and specifically instructed that the ISP had assumed exclusive jurisdiction over the events (the first-hand details of which yet remained unknown to Mr. Kazmierczak) and that Krivak and Mr. Kazmierczak were to take no action of their own, including to investigate.

49.     According to the ISP investigation report, consisting of 68 pages, that became public on or about February 5, 2021 ("ISP Report") three months after the incident, it confirms that ISP assumed responsibility and jurisdiction by the morning of November 6, 2020.  Thus, Mr. Kazmierczak had abided by the legal direction given by the MCPD, ISP and his commanding

officer, Krivak, and he undertook no efforts to initiate or conduct his own or participate in any investigation by the MCFD.

50.    Of course, Krivak and Mr. Kazmierczak would have investigated as normally authorized had they not received instruction from local and state police to not investigate.  As for their routine administrative functions with respect to the unfolding incident, they continued to those activities in the normal course.

**<u>Defendant Parry Accosts Krivak and Mr. Kazmierczak</u>**

51.    On Friday, November 6, 2020, the same day the ISP had informed and warned all involved not to undertake any investigation into the situation, Defendant Parry held an abruptly commenced meeting with Krivak and Kazmierczak.

52.    From the start of the meeting, Defendant Parry was visibly angry, agitated, and did not have control of his emotions or state of mind.

53.    At this time, Krivak and Mr. Kazmierczak, who continued to abide by the lawful directives of both the local and state police departments, were not yet apprised of the exact details themselves serving as the grounds for the police investigation, they possessed no knowledge of the seriousness of the off-duty incident, and had no first-hand details of the events during the gathering at the Residence.

54.    Accordingly, Krivak and Mr. Kazmierczak had no idea for the cause of Defendant Parry emotionally confronting them or the reason for his inappropriate and confrontational demeanor towards them and hostility.  Truly, both were aghast for being attacked by Defendant Parry, in his role as the Mayor of Michigan City.

55.    It was later learned that Defendant Parry's ire was based on a one-to-one meeting that Defendant Parry granted to Austin Swistek's mother during which time she provided her

second-hand account of her son's version of events wherein he was described as a victim at the Residence.

56.     Following the ISP investigation, and as further described below, it turned out that Austin Swistek was an active participant in the ruckus and was criminally charged with Activity Related to Obscene Performance, a Class A Misdemeanor, and Battery, as a Class B Misdemeanor.

57.     At the time Defendant Parry granted the private meeting with Austin Swistek's mother the MCPD had already received a report and taken over jurisdiction of the investigation and matter about the events at the Residence – as reported to Krivak and Mr. Kazmierczak by Mark Swistek of the MCPD, and uncle to Austin Swistek.

58.     At the time Defendant Parry granted the meeting with Austin Swistek's mother, Defendant Parry had been informed that the MCPD received a report about the incident at the Residence, including activities regarding Austin Swistek.

59.     At the time Defendant Parry granted the meeting with Austin Swistek's mother, Defendant Parry was on notice and informed that the MCPD had taken over jurisdiction of the investigation and matter about the events at the Residence.

60.     Indeed, during the meeting with Krivak and Mr. Kazmierczak on November 6, 2020, Defendant Parry stated to them that he learned about the investigation concerning the events at the Residence from the MCPD.

61.     Upon information and belief, Defendant Parry did not make a report directly to the police department following his meeting with Austin Swistek's mom.

62.     Moreover, at the time of the November 6, 2020 meeting between Defendant Parry, Krivak and Mr. Kazmierczak, Defendant Parry had information and knew that the ISP had assumed jurisdiction over the investigation concerning the events at the Residence.

63.     During the meeting on November 6, 2020 between Defendant Parry, Krivak and Mr. Kazmierczak, Defendant Parry never inquired with Krivak or Mr. Kazmierczak what they knew or did not know concerning the events at the Residence.   To the contrary, Defendant Parry leapt to his own conclusions and assumed Krivak and Mr. Kazmierczak knew something, but were doing nothing for personal reasons – which was not true.

64.     During the meeting, it became clear that Defendant Parry was significantly more informed and had information that Krivak and Mr. Kazmierczak had not yet learned or possessed on the subject and that Defendant Parry had illogically and irrationally made baseless assumptions and was disregarding that the Fire Department was strictly warned and informed to not undertake any efforts on their own or to investigate – the latter of which Krivak and Mr. Kazmierczak continued to honor, as they should have.

65.     When Krivak and Kazmierczak attempted to provide the little information they knew, Defendant Parry interrupted and did not let Krivak or Mr. Kazmierczak finish and he was uninterested in learning what little they knew or did not know, or about their activities or focus up to this point with respect to their responsibilities concerning the unfolding details about the incident at the Residence.

66.      Defendant Parry stormed out of the office meeting with Krivak and Mr. Kazmierczak and had no interaction or communication with them again until November 9, 2020.

**Defendant Parry Unlawfully and Without Legal Authority**
**Removes Mr. Kazmierczak as Deputy Chief**

67.     The following Monday, on November 9, 2020, Defendant Parry arrived at the MCFD administrative offices and presented Krivak and Mr. Kazmierczak with letters that he read to both of them.

68.     The letters made no reference to "handling" or allude to any "mishandling" by Mr. Kazmierczak in connection with events, known or otherwise, at the Residence.

69.     During the same meeting, Defendant Parry informed Mr. Kazmierczak that he was removed from his position as the Deputy Chief, that he would return to shift work at his current rank of Captain and remained employed with the MCFD.

70.     Defendant Parry, to date, has provided no legitimate and verifiable rationale or details supporting his decision or legal authority to unlawfully demote and return Mr. Kazmierczak to his shift responsibilities as a Captain of the MCFD.

71.     Indeed, Defendant Parry took his actions without him ever asking Krivak or Mr. Kazmierczak what they knew or did not know about the incident or events, including during the time he was meeting with them.

72.     In fact, most telling of the lack of grounds for his decision, Defendant Parry to date, has not asked Mr. Kazmierczak for his account of the events, or about his actions in furtherance of his position as Deputy Chief between November 5 through 9, 2020.

73.     It became apparent that Defendant Parry's true motivation was not based in fact, but rather, to find any reason to oust Mr. Kazmierczak from the administrative offices so as to stay in line with Defendant Parry's political desires and stance to keep Mr. Kazmierczak out of the administrative offices of the MCFD.

74.     Despite Defendant Parry's unlawful adverse employment actions which he decided to make public as explained below, Defendant Parry, while using his executive powers, did not even have the legal right to remove, demote, or take adverse action against Mr. Kazmierczak in his held position as the Deputy Chief according to the MC Ordinance.

75.     Pursuant to MC Ordinance, only the Michigan City Fire Civil Service Commission ("Commission") had the power or authority to demote (remove) the Deputy Fire Chief, or the Fire Chief, both of which were mandated to strictly follow prerequisites, procedures and processes, including notice and an opportunity to be heard, as further explained under the Cause of Action heading below.

<u>**Defendant Parry's Intentional Defamatory Press Release**</u>
<u>**and Media Coverage About a Private Personnel Matter**</u>

76.     Public reports and discussion following the incident at the Residence described that after copious amounts of alcohol were consumed the off-duty firefighters engaged in activities, including a physical altercation causing serious bodily injury, leading to criminal charges for three attendees.

77.     At the same time as rumors started to leak out about alleged criminal activity among those who attended the gathering at the Residence (which did not include Krivak or Mr. Kazmierczak), Defendant Parry decided to go public with his decision to replace the Chief and remove the Deputy Chief and he did so in a way that unnecessarily entangled Krivak and Mr. Kazmierczak with the incidents and criminal activity at the Residence even though Defendant Parry had no information that either one of them knew any details of the criminal incident at the Residence.

78.     Defendant Parry, as the Mayor of Michigan City, intentionally published the following press release on or about November 10, 2020:



**PRESS Release**
**OFFICE OF MAYOR DUANE PARRY**
**City of Michigan City**

**Michigan City Firefighters Investigation**

The Indiana State Police are currently investigating an incident that occurred on November 5, 2020 at the home of a Michigan City firefighter, while a group of firefighters were off duty.  Mayor Parry has released both the Fire Chief and Deputy Fire Chief from their duties, in part due to their handling of this incident. The Mayor will be announcing future leadership of the Michigan City Fire Department in the upcoming days.

79.    Thus, according to the press release, Defendant Parry published and informed the world that he had reason and evidence to "release" Mr. Kazmierczak "from his duties" as the Deputy Fire Chief, due to his "handling of this incident", which was so serious that the Indiana State Police were investigating the incident, and also implicating Mr. Kazmierczak as subject to the "Michigan City Firefighters Investigation".

80.    At about the same time as this press release, or soon thereafter, the actual participants in the incident were put on paid administrative leave and believed to have been returned to their normal job responsibilities thereafter.  All individuals who attended the gathering at the Residence, including those criminally charged, remain employed with the MCFD.

81.    From the outset, Defendant Parry had no right or authority to publicize a private personnel matter.

82.    Indeed, such private personnel matters are rarely, if ever, disclosed to the employee himself, let alone, published to the public.  Under Indiana law a private employee is not entitled to obtain his personnel file, and the files of public employees fall under an exclusion to the public records act.

14

83.     Even though Defendant Parry, the MCPD, and the Michigan City administration knew full well that Mr. Kazmierczak was not involved with and had no knowledge or details about the criminal "incident" being investigated by the ISP and that he and the City had been instructed by the ISP that they were not to investigate or handle the "incident", Defendant Parry deliberately released a statement falsely providing that Mr. Kazmierczak failed in his duties or that he somehow "mishandled this incident".

84.     Defendant Parry's Press Release, and other statements or interviews he gave, were provided to local news media and outlets, in both print and television reporting via the AP Press causing the mass publishing that Mr. Kazmierczak was "fired".

85.     Numerous articles reported that Defendant Parry was the source of the statement to the AP Press, including CBS2-Chicago who reported "Michigan City Mayor Duane Defendant Parry told The Associated press that Chief Craig Krivak and Deputy Chief Kyle Kazmierczak were fired following an off-duty incident…" https://www.youtube.com/watch?v=3fK0SgkAwVY

86.     Defendants' Press Release even appeared in the daily news of the *Indiana Lawyer*.

87.     Defendant Parry caused a media frenzy throughout the Midwest reporting that Mr. Kazmierczak had been fired, while associating the decision to fire him with a criminal investigation by the highest law enforcement agency in the State – the ISP, and Defendant Parry's statement that his decision was due to the "handling of the incident".  All of which are absolutely and unequivocally untrue, and were untrue when these statements were strung together and made against Mr. Kazmierczak.

88.     Mr. Kazmierczak was not fired from the MCFD.

89.     No factual grounds existed to fire Mr. Kazmierczak from the MCFD, let alone to

15

remove him from the position of Deputy Chief.

90.     Likewise, Defendant Parry did not have the authority or power to fire, release, remove, or demote Mr. Kazmierczak as the Deputy Fire Chief.

91.     The *Laporte County Herald-Dispatch*'s headlines stated "MC's fire chief, top deputy fired after 'incident'". In a sub-heading it stated "Krivak, Kazmierczak are terminated; city won't confirm report of the fight at the party." The article went on to write "The two top administrators at the Michigan City Fire Department have been fired following a reported fight at the home of a firefighter."

92.     Over and again, news headlines across the Midwest falsely stated Mr. Kazmierczak was terminated or fired and connected the firing to what Defendant Parry publicly described as mishandling of an off-duty party and fight.

93.     Michigan City officials, including Defendant Parry, ducked their absolute responsibility to provide any follow-up, voluntarily, or in response to the news media seeking out further details about the fight or "firing", with Defendant Parry and others affirmatively declining to provide any details about the fight.

94.     Defendant Parry could not provide any details because he had no confirmed facts about the exact events at the Residence at the time when the press release and media statements by Defendant Parry were published. Yet, he intentionally pointed to Krivak and Mr. Kazmierczak as *the* only information Defendant Parry leaked out or released to the press.

95.     When all of the intentionally publicized statements are considered together it clearly communicated an inaccurate statement and misled the public that Mr. Kazmierczak was either involved in or had knowledge of the incident/fight, but did nothing, or worse yet that he participated in or covered up the incident in his "handling" of the situation, when none of the

foregoing is true.

96. In fact, at the time of his Press Release, Defendant Parry knew the investigation was in the hands of the ISP and had been for days and that Mr. Kazmierczak had been specifically directed by the ISP not to investigate the matter.

97. Following November 10, 2020, virtually every follow-up news article concerning the subject matter included references to Mr. Kazmierczak and restated Mr. Kazmierczak was removed for his alleged "handling of the incident".

98. An "incident" so severe that the ISP were called in to investigate it. As the serious, and what eventually became criminal, details unfolded about the incident, Defendant Parry's outward and public statement that Mr. Kazmierczak was involved with it by his "handling" of the incident became even more damaging to his reputation.

99. Despite article after article appearing in the newspapers and other media, Defendant Parry and his administration did absolutely nothing to correct the inaccurate and misleading story about Mr. Kazmierczak and set the record straight.

100. Defendant Parry never provided a follow up Press Release stating that Mr. Kazmierczak was not fired, that he had nothing to do with the incident, that he had absolutely no knowledge of the details being investigated by the ISP regarding the "incident", that he was not involved in any cover-up or that the ISP had taken immediate jurisdiction over the investigation.

101. Instead, Defendant Parry, and his administration, let Mr. Kazmierczak's reputation continue to be impugned day-after-day, and to let the falsehoods and misperceptions build upon themselves over a year.

102. Worse yet, Defendant Parry's November 10, 2020 Press Release that he caused to be published and broadcasted on the Michigan City Facebook page mysteriously disappeared

around the time he came under pressure for another Press Release about the MCPD Chief –
referenced earlier in these allegations. But, no retraction followed.

103.    When the individuals involved with the incident at the Residence were criminally
charged, Mr. Kazmierczak's name was disparaged and besmirched again by associating
Defendants Parry and Michigan City's removal (firing) of him, and the prior press releases of his
termination, with the criminal events that happened three months earlier.  Yet, no clarification
was provided by Defendant Parry or his administration, or Defendant Michigan City.  Nothing
was or has been cleared up to correctly explain to the public that Mr. Kazmierczak was not
involved or that Defendant Parry had acted in haste and over-reacted.

104.    Nothing has been publicly corrected to clear Mr. Kazmierczak or his name by
pointing out that he was never mentioned in the ISP Report.   To the contrary, he was again
implicated with the alleged criminal deeds and debauchery of others, with more public statements
that Defendants Parry and Michigan City had removed Mr. Kazmierczak for mishandling the
criminal incident.

105.    For example, on March 7, 2022, a news report with the headline "*Firefighters
plead guilty, escape felonies and jail time after out-of-control drinking parties, records show*",
once again implicated Mr. Kazmierczak with the criminal activities of these other individuals
based on Defendants Parry's and Michigan City's Press Release and public statements.  The
article reported on the gory details of what it described as "a violent out-of-control drinking
party…" and recounted that Mr. Kazmierczak lost his Deputy Chief position "in the wake of the
incident".  Once again falsely connecting Mr. Kazmierczak to the incident based on Defendant
Parry's and Michigan City's false statements. *See*, https://www.nwitimes.com/news/local/crime-
and-courts/firefighters-plead-guilty-escape-felonies-and-jail-time-after-out-of-control-drinking-

18

party-records/article_149521eb-9732-59a3-a881-0b8778068bff.html

106.    To this day, a google search using "Kyle Kazmierczak Michigan City" generates in its initial return articles with headings such as "Michigan City mayor fires fire chief, deputy after incident"; "Michigan City, Indiana Fire Chief, Deputy Fire Chief Fired Over Handling of Off-Duty Incident" and multiple pages of similar results all containing false statements about Mr. Kazmierczak.

107.    Given the amount of press coverage this incident received in the media, it is fair to say that Mr. Kazmierczak's name is inextricably intertwined with the events in the most negative light as a result of Defendant Parry's statements to the press concerning him.

108.    It takes little effort to understand how this sort of false information can cause damages, including examples from one of Mr. Kazmierczak's four young children doing a school project search on google when that time comes to prospective employers performing a background or due diligence search.  All to find a false narrative about Mr. Kazmierczak.

### The ISP Report is Released and Individuals Criminally Charged, Including Austin Swistek, With No Mention of Krivak or Mr. Kazmierczak

109.    Unbelievably, Defendant Parry unlawfully removed Mr. Kazmierczak from his Deputy Chief position and disparaged his reputation in the public eye, without Defendant Parry, the MCPD, or ISP ever interviewing Mr. Kazmierczak.

110.    Indeed, it is believed that none of MCFD's administrative staff including Mr. Kazmierczak were ever interviewed by Defendant Parry, the MCPD or ISP concerning the incident at the Residence.

111.    Yet, Defendants Parry and Michigan City, through their intentional unlawful actions, caused Mr. Kazmierczak to publicly suffer one of the most humiliating and disgraceful accusations of falsely being terminated for allegedly not performing his duties or his mishandling

of a situation, when he was knowingly never involved with any part of those activities or "handling" of it in the first place.

112.    Moreover, Defendant Parry never inquired with Mr. Kazmierczak, at any point, what he had done or attempted to do to fulfill his duties to his superior and higher chain of command, Krivak, or with respect to Michigan City and Defendant Parry.

113.    Defendants Parry and Michigan City's statements misled the public to understand that Mr. Kazmierczak did something illegal, was involved in the incident somehow, or worse yet covered it up.  All of which is patently false.

### Mr. Kazmierczak's Notification to Michigan City and Defendant Parry of Their Unlawful Acts and Request to Remedy Them Are Completely Ignored

114.    The ISP's investigation took several months to complete and was publicly issued on or about February 5, 2021.

115.    Following the ISP's investigation and public release of its report it was abundantly clear that Mr. Kazmierczak was not involved with and did not "handle" or "mishandle" a thing about the incident at the Residence; and, moreover, he was not even interviewed as part of the ISP's investigation.

116.    Defendant Parry has received and read the ISP's investigation report released on or about February 5, 2021.

117.    On or about April 29, 2021, Mr. Kazmierczak, through his undersigned attorney, served Defendants Parry and Michigan City with a very detailed Tort Claim Notice, and as part of the notice, he asked that the City issue a Media Retraction.

118.    The specific suggested language for the media correction/retraction appeared on pages 15 and 16 of the notice.  *See*, Exhibit 1, attached.

119.    Mr. Kazmierczak's Notices and request for a media correction/retraction were

totally ignored. He has never, to this date, received a response to his Notices. Nor has he received the well overdue correction or apology, let alone recovery of his monetary damages.

120.    No corrective action was ever undertaken by Defendants Parry or Michigan City, about the prior false statements and implications concerning Mr. Kazmierczak, however, during a Michigan City Fire Merit Commission meeting on March 1, 2021, its President voluntarily and honorably recognized Mr. Kazmierczak, thanked him for his service and stated that we all know we cannot necessarily believe the rumors and what is on Facebook, alluding to Defendant Parry's false statements and baseless actions. Defendant Parry was physically present during this meeting, but remained silent on this subject.

121.    Mr. Kazmierczak has faced public ridicule. He has faced the embarrassment, pressures and emotional impact cast upon his family name. He and his family have also been on the receiving end of cruel and speculative public accusations that he acted in a dishonest and unprofessional manner.

### Defendant Parry and Michigan City Continue their Hostility Toward Mr. Kazmierczak

122.    After Mr. Kazmierczak was unlawfully returned to his regular shift work, Defendant Parry continued his assault on Mr. Kazmierczak.

123.    Upon information and belief, it was learned by Mr. Kazmierczak that Defendant Parry warned and directed the current Fire Chief who took over for Krivak to discipline Mr. Kazmierczak if he showed up or spoke during public meetings, including on public matters of concern or any possible topic.

124.    For example, Mr. Kazmierczak, who had previously helped to form the Lakefront Safety Committee, was invited by City Council President Angie Nelson to appear and give productive comments of improvements or needs for the Lakefront Safety Committee.

125.    Mr. Kazmierczak learned of Defendant Parry's edict to the current Fire Chief that if he attended the meeting then he would be disciplined.  Consequently, Mr. Kazmierczak, in fear of further unwarranted discipline or adverse employment actions and reprisal, did not attend.

126.    Knowing that Defendant Parry continued to have hostility toward Mr. Kazmierczak, it chilled his participation with the government and lawful speech activities, as Defendant Parry intended it to do.

127.    Despite being put on notice that Defendant Parry had damaged Mr. Kazmierczak's reputation and his request to correct it, Defendant Parry and Michigan City compounded the problem, when asked for routine work history information from a new prospective employer for Mr. Kazmierczak.

128.    Mr. Kazmierczak had previously informed Defendants Parry and Michigan City, in writing, that if the public and employment related statements and information were not immediately corrected and rectified then Mr. Kazmierczak would continue to suffer future damages, including the negative impact on his professional reputation, development and promotions and job opportunities.

129.    Despite being put on notice, instead of providing routine employment history, Defendant Michigan City, through its employees and agents, offered information to a prospective employer that was not requested, refused to offer other routine personnel information and provided misleading information.

130.    Even though Mr. Kazmierczak had an exceptional career and fulfilled his duties in a competent fashion, Defendants Michigan City and Parry, and their employees and agents, did not accurately report Mr. Kazmierczak's work history.

131.    On August 18, 2021 in response to a prospective employer inquiry, Defendants

provided the following:

Position:  Presently ???  Captain with the Michigan City Fire Department

What were the subject's duties:  **Would not specify**.
How would you rate the subject's performance:  **Would not specify**.
Rate how they followed the company safety guidelines:  **Would not specify**.
Rate their attendance:  **Would not specify**.

132.    There was absolutely no need to invite the question of "presently", and the intent

for doing so is clear.   The obvious reason for an experienced human resources employee to

answer in this deliberate way is to have the applicant's employment background flagged.  Put

differently, to interfere with an applicant's job offer – which is exactly what was done here, as it

raised questions during the due diligence period by the prospective employer.

133.    As a result of Defendants Parry's and Michigan City's ongoing and continuous

unlawful actions and hostile work environment, both of which no reasonable employee would

endure or continue to suffer under the same circumstances and despite his request for Defendants

to correct and retract their public statements, Mr. Kazmierczak was constructively discharged

and sought other job opportunities outside of working for Michigan City despite his long-tenure

and future pension and benefits.

134.    On September 8, 2021, Mr. Kazmierczak left his position with the MCFD to take

a firefighter position in the private sector.

## VI.    CAUSES OF ACTION

### COUNT I
### (SECTON 1983 – VIOLATION OF DUE PROCESS RIGHTS)
### Against Defendants Parry and Michigan City

135.    All preceding paragraphs are incorporated herein by reference.

136.    Defendant Parry, as the Mayor of Michigan City, is the lead executive for

Michigan City and policymaker for the municipality.

137.    Defendant Parry is a "person" within the meaning of 42 U.S.C. § 1983.

138.    Defendant Parry's actions and/or omissions were taken under color of state law based on his authority and official position as the Mayor of Michigan City.

139.    Defendant Parry, acting within the scope and course of his position and employment as the Mayor of Michigan City, made the decision and policymaking action to remove Mr. Kazmierczak from his Deputy Fire Chief position.

140.    Pursuant to MC Ordinance, only the Fire Chief has the authority and power to appoint the Deputy Fire Chief. *See*, MC Ordinance § 54-178.

141.    Further, according to MC Ordinance, the Commission shall enforce all regulations governing the selection, promotion, demotion, dismissal and other disciplinary actions of persons employed or to be employed by the MCFD, except for the Fire Chief. *See*, MC Ordinance § 54-136.

142.    The Mayor has no legal authority to appoint or remove, demote, replace or discipline the Deputy Fire Chief.

143.    Mr. Kazmierczak received certain compensation and employment benefits unique to the Fire Deputy Chief position, along with privileges, like a take home vehicle, and more desirable scheduling, work and hours compared to regular shift work for a firefighter.

144.    Mr. Kazmierczak had a protectible and substantive property interest in his appointed position of Deputy Fire Chief.

145.    As a public employee, Mr. Kazmierczak held a protected property interest in his employment as the Deputy Fire Chief arising by state statute, regulation, municipal ordinance or an express or implied contract.

146.    Due to the recognized protectible property interest in the appointed position of Deputy Fire Chief, Michigan City Ordinance afforded and required written notice, a right to a response and to hearing and an opportunity to be heard before being removed, released, demoted or disciplined as a Deputy Fire Chief.  *See*, MC Ordinance § 54-195.

147.    Defendant Parry, in his individual and official capacity, acting under the color of state law, knowingly, intentionally and with deliberate disregard violated Mr. Kazmierczak's due process rights under the Fourteenth Amendment of the United States Constitution, and he was deprived of his property and a property right, when Mr. Kazmierczak was denied his right to notice and an opportunity to be heard, and his rights under the Michigan City Ordinance.

148.    Defendant Parry's actions and/or omissions constituted a violation and deprivation of Mr. Kazmierczak's rights under the Fourteenth Amendment to the United Sates Constitution.

149.    Defendant Parry's actions were made knowingly, intentionally, and with reckless disregard to Mr. Kazmierczak's rights.

150.    Defendant Parry's conduct is actionable under 42 U.S.C. § 1983.

151.    As a second-class city in Indiana, Indiana Code § 36-4-4 *et seq*. apply to Michigan City.  All powers and duties of a city that are executive or administrative in nature shall be exercised or performed by the city executive.  Although Defendant Parry did not have the power, pursuant to MC Ordinance, to remove or demote Mr. Kazmierczak, Defendant Parry exercised, albeit wrongfully, his executive powers to demote and remove Mr. Kazmierczak.

152.    Defendant Parry, as a public official holding the elected position of Mayor, he serves as the executive of Michigan City and therefore his actions causing constitutional injury to Mr. Kazmierczak were caused by a person, Defendant Parry, who possessed and abused his final

policymaking authority.

153.    Mr. Kazmierczak has suffered and continues to suffer damages and irreparable harm as a direct and proximate result and cause of Defendants' unlawful actions.

154.    Mr. Kazmierczak seeks injunctive relief and an award of his damages, including without limitation actual, compensatory and punitive damages, his costs of this action, and recovery of his attorney's fees pursuant to 42 U.S.C. § 1988.

**COUNT II**
**(DEFAMATION)**
**Against Defendants Parry and Michigan City**

155.    All preceding paragraphs are incorporated herein by reference.

156.    Defendants Parry and Michigan City published defamatory statements, comments, communications and inferences about Mr. Kazmierczak.

157.    Defendants Parry's and Michigan City's statements, comments and communications about Mr. Kazmierczak injured his reputation, diminished the esteem, respect, good will, or confidence in Mr. Kazmierczak, and excited derogatory feelings or opinions about Mr. Kazmierczak.

158.    The statements, comments and communications about Mr. Kazmierczak had defamatory imputation.

159.    Defendants Parry's and Michigan City's statements, comments, and communications about Mr. Kazmierczak constitute defamation *per se* because they imputed Mr. Kazmierczak's involvement with criminal conduct and misconduct in his trade, profession, office, or occupation as a firefighter and Deputy Chief.

160.    Defendants Parry's and Michigan City's statements, comments and communications about Mr. Kazmierczak were made intentionally, maliciously and knowingly,

and published defamatory statements about Mr. Kazmierczak with knowledge that they were false or with reckless disregard of whether they were false.

161.    Defendant Parry in making his statements, comments and communications about Mr. Kazmierczak was primarily motivated by ill will.  Further, there was excessive publication of the defamatory statement, and the statements were made without belief or grounds for belief in truth.

162.    Mr. Kazmierczak is entitled to presumed damages as a natural and probable consequence of the defamation *per se* statements, comments, communications, implications and inferences.

163.    Mr. Kazmierczak suffered special damages as a result of the defamatory statements and implications, including without limitation his constructive discharge.

164.    Mr. Kazmierczak has suffered and continues to suffer damages and irreparable harm as a direct and proximate result and cause of Defendants' defamatory statements, comments, communications, implications and inferences.

165.    Defendant Michigan City is vicariously liable for the defamatory statements and inaction to correct them.

166.    Mr. Kazmierczak seeks injunctive relief and an award of damages and his costs of this action.

<u>**COUNT III**</u>
**(CONSTITUTIONAL DEFAMATION – SECTION 1983)**
**Against Defendants Parry and Michigan City**

167.    All of the preceding paragraphs are incorporated herein by reference.

168.    Defendant Parry, in his individual and official capacities, acting under the color of state law, knowingly, intentionally, willfully, maliciously and with deliberate disregard published

false and defamatory statements about Mr. Kazmierczak in connection with his honor, good name, integrity, and reputation in his employment as the Deputy Chief, and did so simultaneously and in conjunction with Defendant Parry's removal and demotion of Mr. Kazmierczak from the position of Deputy Chief which caused a loss of an employment position or adverse employment action with attendant losses.

169.    Defendant Parry, through his unlawful conduct and communications caused a false and unwarranted stigma to attach to Mr. Kazmierczak's now public work history resulting in reputational harm, and a negative impact on his future employment opportunities and work references.

170.    As a result of Defendant Parry's unlawful actions, which constitute a deprivation of a liberty interest in the pursuit of an occupation, Mr. Kazmierczak has been questioned and called to answer about and required to overcome with outside references and evidence that he was not fired or terminated, or subject to discipline due to how he "handled" the incident at the Residence or a showing that he was involved at all in the criminal conduct of the incident.  As a result his continued and future employment remains in jeopardy until the publicity is expressly cured and resolved.

171.    The false statements about Mr. Kazmierczak's employment with the MCFD continue to surface and predictably will be a significant barrier with respect to employment opportunities as he will be questioned about the veracity of the false public information and the improper comments and feedback that Michigan City continues to provide to prospective employers, when compared to the truth as explained by Mr. Kazmierczak.  Until Defendant Parry's comments are corrected publicly and Michigan City provides the correct information on job inquiries it receives from prospective employers, Mr. Kazmierczak's employment

opportunities will remain in serious jeopardy.

172.    Defendant Parry is a "person" within the meaning of 42 U.S.C. § 1983.

173.    Defendant Parry's actions and/or omissions were taken under color of state law based on his authority and official position as the Mayor of Michigan City.

174.    Defendant Parry, acting within the scope and course of his position and employment as the Mayor of Michigan City, made the decision and policymaking action to make press releases with false information and not correct the publicized information.

175.    Defendant Parry, in his individual and official capacity, acting under the color of state law, knowingly, intentionally and with deliberate disregard violated Mr. Kazmierczak's liberty rights under the Fourteenth Amendment of the United States Constitution, and he was deprived of his right.

176.    Defendant Parry's actions and/or omissions constituted a violation and deprivation of Mr. Kazmierczak's rights under the Fourteenth Amendment to the United Sates Constitution.

177.    Defendant Parry's actions were made knowingly, intentionally, and with reckless disregard to Mr. Kazmierczak's rights.

178.    Defendant Parry's conduct is actionable under 42 U.S.C. § 1983.

179.    As a second-class city in Indiana, Indiana Code § 36-4-4 *et seq*. apply to Michigan City.  All powers and duties of a city that are executive or administrative in nature shall be exercised or performed by the city executive.  Although Defendant Parry did not have the power, pursuant to MC Ordinance, to remove or demote Mr. Kazmierczak, Defendant Parry exercised, albeit wrongfully, his executive powers to do so and make false statements publicly.

180.    Defendant Parry, as a public official holding the elected position of Mayor, he

serves as the executive of Michigan City and therefore his actions causing constitutional injury to

Mr. Kazmierczak were caused by a person, Defendant Parry, who possessed and abused his final

policymaking authority.

181.    Mr. Kazmierczak has suffered and continues to suffer damages and irreparable

harm as a direct and proximate result and cause of Defendants' unlawful actions.

182.    Mr. Kazmierczak seeks injunctive relief and an award of his damages, including

without limitation actual, compensatory and punitive damages and his costs, and recovery of his

attorney's fees pursuant to 42 U.S.C. § 1988.

**COUNT IV**
**(FIRST AMENDMENT DISCRIMINATION AND RETALIATION – 1983 CLAIM)**
**Against Defendants Parry and Michigan City**

183.    All of the preceding paragraphs are incorporated herein by reference.

184.    Defendant Parry, as the Mayor of Michigan City, is the lead executive for

Michigan City and policymaker for the municipality.

185.    Defendant Parry is a "person" within the meaning of 42 U.S.C. § 1983.

186.    Mr. Kazmierczak served in an appointed position under the Fire Chief who, in

turn, was appointed by the predecessor mayor to Defendant Parry.

187.    The predecessor mayor of Michigan City, Ron Meer, was elected and served as a

member of the Democratic Party.

188.    Defendant Parry, Michigan City's current mayor, was elected as a member of the

Republican Party.

189.    Upon information and belief, Defendant Parry discriminated and retaliated against

Mr. Kazmierczak by unlawfully removing him from the Deputy Chief position, issuing and

perpetuating defamatory and misleading public statements impugning the integrity and

30

reputation of Mr. Kazmierczak, and never correcting those statements or implications, all of which was done as a result of or in connection with: (a) Mr. Kazmierczak's prior appointment by and service to a Democratic Party mayor and administration, (b) Defendant Parry intentionally and purposedly avoiding to consider Mr. Kazmierczak as a candidate for the Fire Chief position, and (c) then Mr. Kazmierczak being appointed as the Deputy Chief by Krivak which served to circumvent Defendant Parry's politically motivated decisions to not have Mr. Kazmierczak in the MCFD's administrative offices.

190.    Furthermore, upon information and belief, Defendant Parry instructed the Fire Chief to discipline Mr. Kazmierczak if he participated in public meetings. As a result, Mr. Kazmierczak was fearful to participate in public meetings and it chilled or deterred his free speech rights.

191.    Mr. Kazmierczak engaged in constitutionally protected conduct.

192.    It is believed that Defendant Parry's actions were motivated by Mr. Kazmierczak's right to engage in protected conduct.

193.    Defendant Parry's actions and/or omissions were taken under color of state law based on his authority and official position as the Mayor of Michigan City.

194.    Defendant Parry, acting within the scope and course of his position and employment as the Mayor of Michigan City, made the decision and policymaking to discriminate and retaliate against Mr. Kazmierczak on politically motivated reasons or in violation of Mr. Kazmierczak's right to freedoms of association, public participation, to assemble and speech.

195.    Defendant Parry, in his individual and official capacity, acting under the color of state law, knowingly, intentionally and with deliberate disregard violated and deprived Mr. Kazmierczak's rights under the First Amendment of the United States Constitution.

196.    Defendant Parry's actions were made knowingly, intentionally, and with reckless disregard to Mr. Kazmierczak's rights.

197.    Defendant Parry's conduct is actionable under 42 U.S.C. § 1983.

198.    Defendant Parry, as a public official holding the elected position of Mayor, he serves as the executive of Michigan City and therefore his actions causing constitutional injury to Mr. Kazmierczak were caused by a person, Defendant Parry, who possessed and abused his final policymaking authority.

199.    Mr. Kazmierczak has suffered and continues to suffer damages and irreparable harm as a direct and proximate result and cause of Defendants' unlawful actions.

200.    Mr. Kazmierczak seeks injunctive relief and an award of his damages, including without limitation actual, compensatory and punitive damages and his costs, and recovery of his attorney's fees pursuant to 42 U.S.C. § 1988.

## COUNT V
### (TORTIOUS INTERFERENCE WITH EMPLOYMENT RELATIONS)
### Against Defendants Parry and Michigan City

201.    All of the preceding paragraphs are incorporated herein by reference.

202.    Mr. Kazmierczak enjoyed a long-term and existing employment relationship and professional career with the MCFD.

203.    Defendant Parry knew and was very much aware of Mr. Kazmierczak's employment relationship with the MCFD.

204.    Defendant Parry is a third party to the employment relationship between Mr. Kazmierczak and the MCFD.

205.    Defendant Parry intentionally, unjustifiably and without legitimate business purpose interfered with Mr. Kazmierczak's employment relationship with the MCFD.

206.    Defendant Parry's unlawful conduct as alleged herein, including without limitation, defamation, demoting Mr. Kazmierczak without legal or factual authority to do so, airing private personnel matters publicly and on falsehoods, and purposefully not correcting false published accounts about Mr. Kazmierczak all contributed to tortiously and unjustifiably interfere with Mr. Kazmierczak's employment.

207.    Defendant Parry's statements and conduct substantially and materially impaired Mr. Kazmierczak's employment relationship with the MCFD and frustrated Mr. Kazmierczak's expectations with his employment and made the performance of his employment/contractual duties more burdensome for him.

208.    Defendant Parry's interference was so severe and objectively unreasonable that it caused Mr. Kazmierczak to leave his long-term career with the MCFD in his hometown for a different employer, and thus, constitutes a constructive discharge by Defendants Parry and Michigan City.

209.    Mr. Kazmierczak has suffered damages and will continue to suffer damages or irreparable harm as a direct or proximate cause of Defendants' unlawful conduct.

210.    Defendant Michigan City is vicariously liable for Defendant Parry's acts, and the acts of other employees and agents involved with the press releases at issue, failure to correct or retract them, and for performing the work history reports to Mr. Kazmierczak's prospective employer(s).

211.    Mr. Kazmierczak seeks an award of his damages and costs of this action from Defendants.

<u>COUNT VI</u>
**(FALSE LIGHT)**
**Against Defendants Parry and Michigan City**

212.     All of the preceding paragraphs are incorporated herein by reference.

213.     Defendant Parry, as Mayor of Michigan City and in furtherance of his employment responsibilities and within the scope of his employment, made statements and communications about Mr. Kazmierczak that cast him in false light with the public.

214.     Defendant Parry, as Mayor of Michigan City and in furtherance of his employment responsibilities and within the scope of his employment, made statements and communications that constitute publicity that unreasonably placed Mr. Kazmierczak in a false light before the public.

215.     Defendant Parry had knowledge of or acted in reckless disregard as to the falsity of the statements, communications and implications that he publicized about Mr. Kazmierczak and furthermore he acted with knowledge or reckless disregard to the false light to which Mr. Kazmierczak was placed.

216.     The statements and communications made by Defendants Parry and Michigan City are and would be found to be highly offensive to a reasonable person.

217.     Defendants Parry and Michigan City cast Mr. Kazmierczak in a false light when, among other things, public communications were made that he was fired, and it was due to the off-duty firefighter incident and "mishandling" of it with respect to his job duties, when none of these statements were true or based on verifiable facts.

218.     Further, the way that the communications were made sent the message that Mr. Kazmierczak was involved with the incident or that he was part of a cover-up of the criminal activity at the Residence, when he was not.

219.    Moreover, Defendant Parry's statements and information about a private personnel matter were recklessly and improperly released to the public before any sort of investigation could even take place.

220.    Defendant Parry's statements were made as the executive of Michigan City, or within the scope of his employment or job responsibilities on behalf of Michigan City. Consequently, Defendant Michigan City is liable for Defendant Parry's unlawful acts and the damages he has caused, and joint and several and vicarious liability exists.

221.    Mr. Kazmierczak suffered and continues to suffer damages as a result of Defendant Parry and Michigan City casting him in false light before the public at large.

222.    Mr. Kazmierczak seeks an award of his damages and costs of this action from Defendants.

<u>COUNT VII</u>
**(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**
**Against Defendants Parry and Michigan City**

223.    All of the preceding paragraphs are incorporated herein by reference.

224.    Defendants Parry and Michigan City engaged in extreme and outrageous conduct when they publicized that Mr. Kazmierczak was removed or demoted as Deputy Fire Chief in connection with his involvement and "handling" or "mishandling" of the incident between other firefighters that constituted criminal conduct, when he did not have any such involvement or even first-hand knowledge about the details of the altercation when he was accused of knowing something that he did not, and when Defendant Parry knew the incident was reported to the MCPD, that the MCPD had assumed jurisdiction over the investigation and directed MCFD to do nothing with respect to the investigation and had reported it to the ISP.

225.    Defendants' intentional or reckless conduct as alleged herein caused and

continues to cause severe emotional distress to Mr. Kazmierczak.

226.    Mr. Kazmierczak has suffered and continues to suffer damages and irreparable harm as a direct and proximate result and cause of Defendants' intentional or reckless acts.

227.    Defendant Michigan City is vicariously liable for Defendant Parry's acts, and the acts of other employees and agents involved with the press releases at issue, failure to correct or retract them, and for performing the work history reports to Mr. Kazmierczak's prospective employer(s).

228.    Mr. Kazmierczak seeks an award of his damages and costs of this action from Defendants.

## VII.    RELIEF REQUESTED

**WHEREFORE,** Plaintiff Kyle A. Kazmierczak respectfully requests the following relief be granted:

A.    Award of all of his damages, including without limitation, compensatory, pecuniary, presumed, incidental, consequential, and special damages;

B.    Entry of a mandatory injunction directing Defendants to issue a press release and statement retracting and correcting prior inaccurate statements, comments and implications as a result of Defendant Parry's comments and statements occurring on or after November 5, 2020;

C.    Order that Defendants cleanse and repair the search engine optimization for Mr. Kazmierczak, pay for defamation removal services, and manage online reputation management and negative link de-indexation at their cost;

D.    Awarding all lost compensation, wages/or salary and all other employment-related benefits including but not limited to, the value of any lost pension benefits

or retirement funds that Mr. Kazmierczak sustained or will sustain as a result of Defendants' conduct;

E.      Awarding compensatory damages in an amount to be determined by a jury to make Mr. Kazmierczak whole for the mental anguish, emotional distress, embarrassment, harassment, public ridicule, damage to his reputation and other non-pecuniary damages he has suffered as a result of Defendants' unlawful conduct;

F.      Awarding punitive damages in an amount to be determined by a jury to punish Defendants for their unlawful conduct which was malicious or undertaken with reckless indifference to Mr. Kazmierczak's rights and to deter others from similar conduct;

G.      Awarding the costs of maintaining this action, including an award of reasonable attorneys' fees; and

H.      Awarding all other relief proper in the premises.

## TRIAL BY JURY

Plaintiff Kyle A. Kazmierczak hereby respectfully demands a trial by jury on all issues so triable.

Date:  November 2, 2022                 Respectfully submitted,

                                        */s/ Kristopher N. Kazmierczak*
                                        Kristopher N. Kazmierczak, No. 19430-49
                                        STOLL KEENON OGDEN PLLC
                                        334 North Senate Avenue
                                        Indianapolis, IN 46204
                                        Office: (317) 464-1100; Fax: (317) 464-1111
                                        kkaz@skofirm.com

                                        *Counsel for Plaintiff Kyle A. Kazmierczak*



**Kristopher N. Kazmierczak**
kkaz@kkclegal.com
Direct: 317-615-4230

## <u>NOTICE OF TORT CLAIM</u>

April 29, 2021

| <u>Via Email (</u>▮▮▮▮▮▮▮▮▮▮▮▮▮<u>),</u> <u>Hand-Delivery and Certified Mail</u> **Article # 9314 8699 0430 0082 0222 22** Hon. Mayor Duane Parry Mayor's Office 100 East Michigan Boulevard Michigan City, IN 46360 | <u>Via Certified Mail</u> **Article # 9314 8699 0430 0082 0231 68** Political Subdivision Risk Management Commission 311 W. Washington St, Suite 103 Indianapolis, IN 46204 |
|---|---|
| <u>Via Email (</u>▮▮▮▮▮▮▮▮▮▮▮▮▮<u>),</u> <u>Hand-Delivery and Certified Mail</u> **Article # 9314 8699 0430 0082 0233 59** Amber Lapaich-Stalbrink Corporation Counsel 100 East Michigan Boulevard Michigan City, IN 46360 | <u>Via Certified Mail</u> **Article # 9314 8699 0430 0082 0238 78** Michigan City Common Council Council Chambers, City Hall 100 E. Michigan Boulevard Michigan City, IN 46360 |

Re:    *Notice of Tort Claim for Captain Kyle A. Kazmierczak*

To Whom It May Concern:

Our firm represents Captain Kyle A. Kazmierczak in connection with his claims against the City of Michigan City and Mayor Duane Parry, their employees or agents and/or other governmental entities who are or may be responsible for all, or a portion of, the damages and injuries sustained by Capt. Kazmierczak. This correspondence constitutes and is intended to provide you with Capt. Kazmierczak's Notice of Tort Claim pursuant to Indiana Code § 34-13-3-8. Pursuant to Indiana Code § 34-13-3-10, the following is intended to comply with that notice requirement for events occurring on November 6, 2020 and thereafter.

On or about November 10, 2020, with callous disregard, deliberate indifference and carelessness Mayor Parry, and his administration personnel for the City of Michigan City, caused serious and irreversible damages to the reputation and career of Capt. Kazmierczak when the Mayor publicly announced and caused the press to broadly publish a personnel decision that he

**Attorneys at Law**

**Address**
334 N. Senate Ave.
Indianapolis, IN 46204

**Contact**
Main   317 464 1100
Fax    317 464 1111

kkclegal.com



Notice of Tort Claim
April 29, 2021
Page 2

"fired" Capt. Kazmierczak in connection with an off-duty incident and his alleged "mishandling" of the incident, when these statements and implications were inaccurate, defamatory and cast Capt. Kazmierczak in a false light.

## I.   CIRCUMSTANCES WHICH BROUGHT ABOUT LOSS, EXTENT OF LOSS AND TIME AND PLACE OF LOSS

### Background

Capt. Kazmierczak was born and raised in Michigan City, Indiana.  Capt. Kazmierczak has dutifully served as a public servant for Michigan City in many positions and roles during his lifetime, including as a lifeguard, firefighter, fire department instructor, and fire department marshal.  Capt. Kazmierczak has been active his entire career with volunteer and community events.  He currently holds the rank of Captain of the Michigan City Fire Department ("MCFD").  Capt. Kazmierczak has served MCFD for over 21 years.   Capt. Kazmierczak has enjoyed an excellent reputation in his community and profession and has been publicly recognized for his exceptional efforts as a representative of the MCFD.  Several news articles and postings have highlighted his positive contributions to the community at-large and MCFD, and examples of superior conduct and bravery.

Mayor Parry was elected on November 5, 2019 as the Mayor of Michigan City.  According to Michigan City Ordinance, the Mayor appoints the Fire Chief, and the appointed Fire Chief appoints the Deputy Fire Chief.  Michigan City Code §§ 54-177 and 178.  On or about January 2, 2020, Mayor Parry appointed Lieutenant Craig S. Krivak to the position of Fire Chief.  Chief Krivak has served the department for over 21 years.  In turn, Chief Krivak selected Capt. Kazmierczak as his Deputy Fire Chief.

### November 5, 2020 Off-Duty Firefighter Incident Not Involving Capt. Kazmierczak

On November 5, 2020, a number of **off-duty** firefighters gathered at the house of a veteran firefighter following an on-duty fire event the evening before which continued into the early morning of November 5, 2020.  The off-duty firefighters were together for the purpose of commemorating the first fire of a rookie firefighter.  Reports reflect that copious amounts of alcohol were consumed during this **off-duty** event.

On November 5, 2020, Lt. Krivak, who served as the Chief at the time, and Capt. Kazmierczak, who served as Deputy Chief at the time, were on duty and present in the Fire



Notice of Tort Claim
April 29, 2021
Page 3

Department's administrative offices[1].  Former Deputy Chief Kazmierczak had <u>no</u> prior or advance knowledge or notice of the gathering referenced above.  Likewise, it is believed that former Chief Krivak did not know either.

While on-duty during their shift on November 5, 2020, former Chief Krivak and former Deputy Chief Kazmierczak became aware of an emergency call and run to an address they recognized as belonging to a fellow firefighter.  The call reported it was for an unconscious person.  It so happened, unknown to former Deputy Chief Kazmierczak, and also upon information and belief, unknown to former Chief Krivak, the call was where the gathering among the firefighters was taking place.[2]

Chief Krivak and former Deputy Chief Kazmierczak learned as a result of the emergency run that fellow Captain John Mellen had lost consciousness and was the subject of the emergency call.  Thereafter, scarce details started to develop concerning a gathering at the residence, but <u>no</u> report of any specific activity, and in particular any physical altercations or other incidents were made known or directly reported by the participants at the gathering to former Deputy Chief Kazmierczak, and as far as he knows those events had not been reported by the participants directly to the MCFD.

Late in the afternoon on November 5, 2020, former Chief Krivak was informed by the then Chief of the Michigan City Police Department that the police had received a report about an alleged altercation at the gathering and that the **Michigan City Police Department ("MCPD") was handling the investigation**.

### The Indiana State Police Immediately Assumes Jurisdiction and the Investigation Over the Prior Report to MCPD

Following their return to the MCFD's administrative offices late in the afternoon on November 5, 2020, former Chief Krivak and former Deputy Chief Kazmierczak considered interim administrative measures relating to what they understood to be a situation limited to an off-duty event that led to an emergency call, and a police report being investigated by the MCPD.  The interim measures included their review and preparation of administrative leave options.  Prior to initiating an inquiry into what they understood to simply be an issue concerning an unofficial and off-duty gathering where a Fire Department officer had lost consciousness, former Chief Krivak and former Deputy Chief Kazmierczak were contacted by the Indiana State Police ("ISP"). They were instructed by the ISP that it had assumed exclusive jurisdiction over

---

[1] Lt. Krivak will be referred to as former Chief Krivak and Capt. Kazmierczak as former Deputy Chief Kazmierczak for the period of time before they were removed from their leadership positions by Mayor Parry.
[2] Former Deputy Chief Kazmierczak did not enter the residence and therefore was unaware of who else was present or the events occurring therein.



the investigation and incidents.  Former Chief Krivak and Deputy Chief Kazmierczak were specifically instructed that the MCFD must defer to the ISP investigation and take NO action of their own to investigate.   Thus, as of November 6, 2020, the MCFD was instructed by the ISP that they were prohibited and restricted from investigating the situation in all respects.  Also, prior to ISP contacting former Chief Krivak, the MCPD had made a report to the ISP and also received the same direction from the ISP that the MCPD was prohibited and restricted from conducting their own investigation.

As of November 6, 2020, former Deputy Chief Kazmierczak was not apprised of the exact details serving as the grounds for the police investigation, he possessed no knowledge of the seriousness of the off-duty incident, and he had no knowledge concerning all the events that led to an ISP investigation and eventual criminal charges.

According to the ISP investigation report, consisting of 68 pages, that became public as of February 5, 2021 ("ISP Report"), it confirms that ISP assumed responsibility and jurisdiction by the morning of November 6, 2020.  Former Deputy Chief Kazmierczak abided by the legal direction given by the MCPD, ISP and his commanding officer, former Chief Krivak, and he undertook no efforts to initiate or conduct his own or participate in any investigation by the MCFD.

### Mayor Parry Makes an Emotionally Charged and Snap Judgment Founded Merely Upon Speculation to Summarily Remove Former Chief Krivak and Former Deputy Chief Kazmierczak

On Friday, November 6, 2020, the same day the ISP had informed and warned all involved not to undertake any investigation into the situation, Mayor Parry met with former Chief Krivak and former Deputy Chief Kazmierczak.  Mayor Parry was visibly angry, agitated and did not have control of his emotions.  Mayor Parry laid out photos of a person later identified as Austin Swistek (a fellow firefighter and the nephew of the former MCPD).  Mayor Parry said in a loud voice "why he learned from the MCPD about Austin Swistek?".[3]  Even though Mayor Parry acknowledged during this meeting that he knew this complaint was initially lodged with the proper authority, the MCPD, and that the investigation was now in the exclusive jurisdiction of the ISP, Mayor Parry never inquired during this meeting about what Chief Krivak or former Deputy Chief Kazmierczak knew or did not know at that point about the allegations of the events on November 5, 2020.

---

[3] It was later discovered that Mayor Parry provided an audience and one-to-one meeting with Austin Swistek's mother where she presented her version or her son's version of the events prior to the Mayor confronting former Chief Krivak.  It is unknown if Mayor Parry directed Mrs. Swistek to make a police report, or if the Mayor reported it himself following this meeting.



At this point, it became apparent that Mayor Parry had more information than Lt. Krivak and Capt. Kazmierczak on the subject, he had illogically and irrationally jumped to conclusions and he was disregarding that the Fire Department was strictly warned and informed to not undertake any efforts on their own or to investigate – the latter of which Lt. Krivak and Capt. Kazmierczak were honoring, as they should.  When Lt. Krivak and Capt. Kazmierczak attempted to provide information, Mayor Parry interrupted and did not let Lt. Krivak or Capt. Kazmierczak finish and he was uninterested in learning what they knew or did not know, or what had been their focus up to this point with respect to their responsibilities.

The following Monday, November 9, 2020, Mayor Parry arrived at the administrative offices of the MCFD.   Mayor Parry presented former Chief Krivak and former Deputy Chief Kazmierczak with letters that he read to both of them.  The letters did not make reference to "handling" or "mishandling" of the incident.  The Mayor also had a MCPD officer present with a body camera recording the meeting.  Mayor Parry proceeded to read the letters informing that former Chief Krivak and former Deputy Chief Kazmierczak were relieved as Chief and Deputy Chief immediately and would return to shift work at their current ranks.  Thus, both of them remained employed. They were then required to clean out their desks in the presence of the police officer and were escorted off the premises by the officer.

Mayor Parry provided no legitimate details supporting the reason for his decision, and has not done so with respect to former Deputy Chief Kazmierczak as of the date of this letter. Indeed, Mayor Parry took his actions without ever asking what former Chief Krivak and former Deputy Chief Kazmierczak knew or did not know about the incident or events.  Moreover, Mayor Parry to this day has not asked former Chief Deputy Kazmierczak for his account of the events or his actions on November 5 through 9, 2020 or what he may have been directed or instructed to do or not do by former Chief Krivak, the MCPD or ISP.

### November 10, 2020 Press Release by Mayor Parry and False AP Press Coverage Concerning Capt. Kazmierczak Throughout the Midwest

Unknown to Capt. Kazmierczak, Mayor Parry and members of his administration prepared a Press Release to publicize Mayor Parry's decision to remove (or as reported "fire") Lt. Krivak and Capt. Kazmierczak.  While it has yet to be determined exactly when the Press Release was prepared, posted and published to the press and news media, a news article first appeared in local news on November 10, 2020.   The Press Release published the following statement:


**katz.korin.**
**cunningham.**

## PRESS Release
### OFFICE OF MAYOR DUANE PARRY
### City of Michigan City

#### Michigan City Firefighters Investigation

The Indiana State Police are currently investigating an incident that occurred on November 5, 2020 at the home of a Michigan City firefighter, while a group of firefighters were off duty.  Mayor Parry has released both the Fire Chief and Deputy Fire Chief from their duties, in part due to their handling of this incident. The Mayor will be announcing future leadership of the Michigan City Fire Department in the upcoming days. [4]

Even though Mayor Parry, the MCPD and the administration knew full well that Capt. Kazmierczak was not involved with and had no knowledge or details about the "incident" being investigated by the ISP and that he and the City had been instructed by the ISP that they were not to investigate or handle the "incident", Mayor Parry deliberately released a statement falsely providing that Capt. Kazmierczak failed in his duties or that he somehow "mishandled this incident".  This Press Release was provided to local news media and outlets, in both print and television reporting, via the AP Press causing the mass publishing that Capt. Kazmierczak was "fired".  Articles reported that Mayor Parry was the source of the statement to the AP Press, including CBS2-Chicago who reported "Michigan City Mayor Duane Parry told The Associated press that Chief Craig Krivak and Deputy Chief Kyle Kazmierczak were **fired** following an off-duty incident…"  https://www.youtube.com/watch?v=3fK0SgkAwVY

The *Laporte County Herald-Dispatch's* headlines stated "MC's fire chief, top deputy **fired after 'incident'**".  In a sub-heading it stated "Krivak, Kazmierczak **are terminated**; city won't confirm report of the fight at the party."  The article went on to write "The two top administrators at the Michigan City Fire Department have been **fired** following a reported fight at the home of a firefighter."

Over and again, news headlines across the Midwest falsely stated Capt. Kazmierczak was terminated or fired and connected the firing to what Mayor Parry publicly described as

---

[4] Interestingly, this Press Release remained on the City's Facebook page, until another Press Release concerning MCPD Chief Campbell was removed following a recent racially charged public controversy about Mayor Parry concerning Chief Campbell.   It is unknown why the City administration removed the November 10, 2021 Press Release.



mishandling of an off-duty party and fight.  Further, when all of the statements are considered together it clearly sent the inaccurate statement and misled the public that Capt. Kazmierczak was either involved in or had knowledge of the incident/fight, but did nothing, or worse yet it implied or gave the impression of a coverup, when none of the foregoing is true.  In fact, at this same time, Mayor Parry knew the investigation was in the hands of the ISP and had been for days and that Capt. Kazmierczak had been specifically directed by the ISP not to investigate the matter.

Thereafter, virtually every follow up news article concerning the subject included and restated Capt. Kazmierczak was removed for his alleged "handling of the incident".  An "incident" so severe that the ISP were called in to investigate it.  As the serious, and what eventually became criminal, details unfolded about the incident, Mayor Parry's implication of Capt. Kazmierczak being involved with or his "handling" of the incident became even more damaging to his reputation.

Despite article after article appearing in the newspapers and other media, Mayor Parry and his administration did absolutely nothing to correct the inaccurate and misleading story about Capt. Kazmierczak.  Mayor Parry never provided a follow up Press Release stating that Capt. Kazmierczak was not fired, that he had nothing to do with the incident, that he had absolutely no knowledge of the details being investigated by the ISP regarding the "incident", that he was not involved in any cover-up or that the ISP had taken immediate jurisdiction over the investigation.  Instead, Mayor Parry, and his administration, let Capt. Kazmierczak's reputation continue to be bashed day-after-day, and to let the falsehoods and misperceptions build upon themselves over a several month period.[5]  In the meantime, Capt. Kazmierczak was returned to shift duty and continues to serve the citizens of the City.

**The ISP Report is Released and Individuals Criminally Charged,
Including Austin Swistek, With No Mention of Lt. Krivak or Capt. Kazmierczak**

Unbelievably, Capt. Kazmierczak was removed from his Deputy Chief position and then his reputation disparaged in the public eye, without Mayor Parry, the MCPD, or ISP ever interviewing him.  Indeed, it is believed that none of MCFD's administrative staff were ever interviewed by Mayor Parry, the MCPD or ISP.  The reason for the lack of interview is that it was well known that Capt. Kazmierczak had nothing to do with the incident, he was not there, he was not an eyewitness, and he did not receive direct reports about events that day. Yet, he

---

[5] No corrective action, statement or support has been made by the Mayor, or the City, about the prior statements and implications concerning Capt. Kazmierczak, however, during a Michigan City Fire Merit Commission meeting on March 1, 2021, its President voluntarily and honorably recognized Capt. Kazmierczak, thanked him for his service and stated that we all know we cannot necessarily believe the rumors and what is on Facebook.  Mayor Parry was present during this meeting, but remained silent on this subject.



Notice of Tort Claim
April 29, 2021
Page 8

publicly suffered one of the most humiliating and disgraceful accusations of being terminated for allegedly not performing his duties or his mishandling of a situation, when he was never involved or had knowledge.  Moreover, the Mayor never asked Capt. Kazmierczak what he had done or attempted to do to fulfill his duties to Chief Krivak or with respect to the City and Mayor on the day of the event.

        The statements misled the public to believe that Capt. Kazmierczak did something illegal, was involved in the incident somehow, or worse yet covered it up.  All of which is patently false.

        Mayor Parry's acts were so apparently beyond the limits of reasonableness members of the public questioned his statements and decisions.  For example:



Does anyone know how this criminal act should have been handled?The act was not on city time or city property. Why would the chief and assistant chief take the heat for this?

Jim Owens
Feb 12. 2021

Reply to this comment

https://whatsnewlaporte.com/2021/02/12/3-michigan-city-firefighters-arrested-after-off-duty-assault-of-firefighter-in-november/

katz.korin.
cunningham.

Notice of Tort Claim
April 29, 2021
Page 9



Scott Allen
Feb 18. 2021

Unless Michigan City has a standing off duty code of conduct in
the Fire Departments Standard Operating Procedures? That
directly holds The Chief and Deputy Chief liable, in cases of
Criminality involving subordinates. The Chief and DC should not
have been terminated. It appears Personnel had been off duty
at the time of incident in question? I'm not sure what curve was
thrown to punish the chain of command. This is a criminal act,
not a department direct administrative one. Then again I don't
know the totalitarian of the circumstances involved. Regardless
I would be filing grievances was the city commission, and the
Mayors office. As well as litigation against the City. For wrongful
termination out of the control of a superior.

Reply to this comment

The ISP Report was published on February 5, 2021. There was absolutely no mention of
Lt. Krivak or Capt. Kazmierczak in the ISP Report. No mention that they were asked for
statements. No mention of their involvement. No mention that they knew of or mishandled
anything. Indeed, this is because they were not involved.

When the individuals involved were criminally charged, including Austin Swistek for
extremely lewd behavior, Capt. Kazmierczak's name was disparaged again associating his
demotion, and the prior press releases of his termination, with the criminal events that happened
three months earlier. Yet, no clarification was provided by the Mayor or his administration.
Nothing was cleared up that Capt. Kazmierczak was not involved or that the Mayor had acted in
haste and over-reacted. Nothing was said about Capt. Kazmierczak to clear his name and point
out that he was never mentioned in the ISP Report. To the contrary, he was again implicated
with the alleged criminal deeds and debauchery of others and another public statement that the
Mayor removed him for mishandling the criminal incident.

Over the past five plus months, Capt. Kazmierczak's view has remained that the truth
would promptly and eventually reach the public and the City administration would be the first to
correct the falsehoods. Capt. Kazmierczak remained silent out of respect for the office of the
Mayor. He was patient and held out hope that the Mayor's office would correct the record.
Alternatively, Capt. Kazmierczak believed that with time the press would clear it up if the Mayor



Notice of Tort Claim
April 29, 2021
Page 10

failed to do so.  Instead, the injuries to his name and reputation continued to multiply article-by-article.  Given the amount of press coverage this incident received in the media, it is fair to say that Capt. Kazmierczak's name is inextricably intertwined with the events in the most negative light as a result of Mayor Parry's statements to the press concerning him.

Capt. Kazmierczak thought that surely after the ISP Report become public and criminal charges were filed by the State that Mayor Parry, or at least the press with the right inquiry, would straighten things out, correct the record, and unequivocally state that the prior accounts about Capt. Kazmierczak were false, a mistake and that his removal was a complete overreaction.  It has not happened voluntarily, and Capt. Kazmierczak's name and reputation continue to be wrongfully associated with the criminal case that has arisen out of the incident.  In fact, Mayor Parry's silence on the issue of Capt. Kazmierczak's reputation with the MCFD was deafening at the March 1, 2021 Merit Commission meeting.  To this point, Mayor Parry's statements implicating Capt. Kazmierczak with the "incident" continue to be picked up in news reports, as late as last week in the *Laporte County Herald-Dispatch*, falsely tying Capt. Kazmierczak's removal to the criminal events and allegations of "mishandling."

Capt. Kazmierczak has waited for over five months for affirmative and responsible action to be taken by the Mayor and his administration to correct the record.  It has not happened.  Nor is it forthcoming, despite the ISP Report and criminal charges becoming public over two months ago and demonstrating absolutely zero link to Capt. Kazmierczak.

The five plus months following Mayor Parry's Press Release, including the Thanksgiving and Christmas holidays, through the present have been at the top of the worse days Capt. Kazmierczak has had to endure in his professional life all caused by Mayor Parry's Press Release and the string of events he set into motion.  Capt. Kazmierczak has faced public ridicule. He has faced the embarrassment, pressures and emotional impact cast upon his family name.  He and his family have also been on the receiving end of cruel and speculative public accusations that he acted in a dishonest and unprofessional manner.

## II.    TORT CLAIMS

Capt. Kazmierczak gives notice of all of his tort claims available to him under Indiana law.  The following expression of the example of tort claims are not intended to be exhaustive or to the exclusion of others and Capt. Kazmierczak reserves his right to bring all claims, including those sounding in tort or otherwise, or arising under Federal or Indiana law.  Among other possible tort claims, Capt. Kazmierczak gives notice of claims for defamation, false light and tortious interference with terms of employment contract.



Notice of Tort Claim
April 29, 2021
Page 11

## **Defamation**

Defamation is "that which tends to injure reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff." *Miller v. Cent. Indiana Cmty. Found., Inc.*, 11 N.E.3d 944, 955–56 (Ind. Ct. App. 2014)(citing *Davidson v. Perron,* 716 N.E.2d 29, 37 (Ind. Ct. App. 1999), *trans. denied.*).

To establish defamation, a plaintiff must prove the following elements: (1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages. *Id. Shine v. Loomis,* 836 N.E.2d 952, 956 (Ind. Ct. App. 2005), *trans. denied*. Malice is shown where defendant published the defamatory statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *In re Indiana Newspapers Inc.*, 963 N.E.2d 534, 550 (Ind. Ct. App. 2012). Reckless disregard may be shown where "the false publication was made with a 'high degree of awareness of their probable falsity'". *J.-Gazette Co. v. Bandido's, Inc.*, 712 N.E.2d 446, 456 (Ind. 1999).

"A communication is defamatory *per se* if it imputes: (1) criminal conduct; (2) a loathsome disease; (3) **misconduct in a person's trade, profession, office, or occupation**; or (4) sexual misconduct." *Id*. (citing *Levee v. Beeching,* 729 N.E.2d 215, 220 (Ind. Ct. App. 2000). When a communication is defamatory *per se*, "damages are presumed even without proof of actual harm to the plaintiff's reputation." *Newman v. Jewish Cmty. Ctr. Assn. of Indianapolis*, 875 N.E.2d 729, 739 (Ind. Ct. App. 2007).

Clearly, publicly stating, or sponsoring communications knowing them to be false and remaining silent, that Capt. Kazmierczak was fired falls within the scope of defamatory imputation. Additionally, by linking the personnel decision to the horrific, and criminal, off-duty incident falsely communicated to the public that Capt. Kazmierczak was either involved with, or had specific knowledge about the incident – which he did not. Further, by publicly accusing Capt. Kazmierczak of "mishandling" an investigation or his dealings in connection with the criminal events that came out about the off-duty party it is another act constituting defamatory imputation. Indeed, Mayor Parry's letter to Capt. Kazmierczak never uses the word "mishandled". This is because there were no facts to support such an accusation privately, let alone, to be published to the community. Furthermore, there was nothing to mishandle as the matter was being investigated and handled by the proper authorities, the MCPD and Indiana State Police before Mayor Parry met with Lt. Krivak and Capt. Kazmierczak on November 6, 2020.

The communication(s) about Capt. Kazmierczak were made with malice and in reckless disregard of their truth. He was not fired or terminated. Yet, the public communications in the press consistently stated he was fired. Capt. Kazmierczak was not fired for being involved with the off-duty incident. Nevertheless, the public communications in the press universally



Notice of Tort Claim
April 29, 2021
Page 12

connected his firing to his involvement with the incident.  He did not mishandle any investigation or aspect of the incident, but to the contrary, it was communicated that he was fired, in part, for mishandling of the investigation or incident.   These false and defamatory statements have been permitted to be considered the truth in the public eye to date, without any effort by Mayor Parry or his admininstration to correct them or set the record straight.

The defamatory comments are of such a bad nature that Indiana law presumes Capt. Kazmierczak has suffered damages as a result of those communications being published.  Indeed, because the false statements involve Capt. Kazmierczak's profession and imputed misconduct in his trade or profession, and worse yet imputing criminal acts given the story-line that developed about the off-duty incident, Capt. Kazmierczak is entitled to recover damages, as a matter of law, and he does not even have to prove damages.  *See*, *Miller v. Cent. Indiana Cmty. Found., Inc.*, 11 N.E.3d 944, *supra*.

## False Light

"The tort of invasion of privacy by false light as "publicity that unreasonably placed the other in a false light before the public."  *Newman v. Jewish Cmty. Ctr. Assn. of Indianapolis*, 875 N.E.2d 729, 743 (Ind. Ct. App. 2007).  "One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."  *Id*.  "[P]ublicity" occurs when: "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."  *Lovings v. Thomas*, 805 N.E.2d 442, 446 (Ind. Ct. App. 2004).

Without a doubt, Capt. Kazmierczak was cast in a false light when public communications were made that he was fired, and it was due to the off-duty firefighter incident and "mishandling" of it with respect to his job duties.   None of which was based in fact.  The way that the communications were made sends the message that Capt. Kazmierczak was involved with the incident or that he was part of a cover-up of the misconduct.   Moreover, Mayor Parry's statements and information about a private personnel matter were recklessly and improperly released to the public before any sort of investigation could even take place.

Capt. Kazmierczak's personal and professional reputation was damaged due to the communications placing him in a false light.  As previously explained, the cloud of false light was repeated in the press, with full knowledge of Mayor Parry and his administration, without any attempt to correct it.  To this date, a search of the internet reveals the false light about Capt.



Kazmierczak and overshadows his life work of exceptional service to his City and community. Capt. Kazmierczak has suffered and continues to suffer damages as a result.

## Tortious Interference with Employment Relations

"Indiana has long recognized that intentional interference with a contract is an actionable tort, and includes any intentional, unjustified interference by third parties with an employment contract." *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1234 (Ind. 1994)(citing *Bochnowski v. Peoples Fed. Sav. & Loan*, 571 N.E.2d 282, 284 (Ind. 1991)). "The tort reflects the public policy that contract rights are property, and under proper circumstances, are entitled to enforcement and protection from those who tortiously interfere with those rights." *Id*. An employee must be able to expect that his continued employment depends on the will of his employer and not upon the whim of a third party interferer. *Drake v. Dickey*, 2 N.E.3d 30, 38 (Ind. Ct. App. 2013), *aff'd*, 12 N.E.3d 875 (Ind. 2014), and *transfer granted, opinion vacated,* 12 N.E.3d 877 (Ind. 2014). Indiana has recognized that, "where a third party's conduct substantially and materially impairs the execution of an employment contract, frustrating an employee's expectations under her contract and making performance of her contractual duties more burdensome, the inducement of breach element of a claim for tortious interference with a contractual relationship is satisfied." *Id*.

Capt. Kazmierczak's employment with the MCFD was intentionally interfered with and the interference was done without justification by Mayor Parry when he summarily removed him from the position of Deputy Chief. Mayor Parry is a co-worker of Capt. Kazmierczak and is not a party to the employment contract between Capt. Kazmierczak and the MCFD. Even if Mayor Parry could be considered a party to the employment between Capt. Kazmierczak and the MCFD, Indiana law provides that he can be considered a third party under Indiana law where the interfering act "rests outside [of his] authority" or "actions [were] taken outside the scope of [his] authority." *Trail v. Boys & Girls Clubs of Nw. Indiana*, 845 N.E.2d 130, 139 (Ind. 2006). As explained next below, according to the applicable Michigan City Code, only the MCFD Chief has the authority to appoint and remove the Deputy Chief. The Mayor does not have the authority to summarily remove the Deputy Chief. Contrary to his authority, Mayor Parry summarily removed Capt. Kazmierczak from the position of Deputy Chief, and by doing so tortiously interfered with the employment contractual rights of Capt. Kazmierczak. Mayor Parry also made public statements impugning the integrity of Capt. Kazmierczak with respect to his position and thereby additionally interfered with his employment rights.

## Federal Section 1983 Due Process Claim

While the position of Mayor has the express authority to remove the Chief, only the Chief, who has the sole power to appoint a Deputy Chief, may remove the Deputy Chief. Michigan City Code § 54-194.



Notice of Tort Claim
April 29, 2021
Page 14

Although outside of the requirements of this tort claim notice, Capt. Kazmierczak also has available to him federal claims such as under 42 U.S.C. §1983 for violation of his due process rights under the U.S. Constitution.  Capt. Kazmierczak had rights with respect to his appointed position of Deputy Chief.  By virtue of Michigan City Code Section 54-194, the Mayor is without power or authority to summarily remove a Deputy Chief, including Capt. Kazmierczak.  The power of removal or demotion resides with and is limited to the Chief and Michigan City Fire Merit Commission only.  In this instance, Mayor Parry may have had the right or authority to remove Lt. Krivak outside of the Michigan City Fire Merit Commission process, but he had absolutely no right to remove Capt. Kazmierczak from his position of Deputy Chief.  Indeed, the proper mechanism was to remove and replace the Chief and then have the new Chief deal with the removal or appointment of the Deputy Chief.   Consequently, Mayor Parry, who was acting under the color of state law, violated Capt. Kazmierczak's due process rights connected with and to hold his position of Deputy Chief when Mayor Parry summarily removed Capt. Kazmierczak.  As a result, Capt. Kazmierczak is entitled to damages resulting from Mayor Parry's unlawful actions and recovery of his costs and attorneys' fees under 42 U.S.C. §§1983 and 1988.

Upon the passing of ninety (90) days after this notice, or upon receipt of a denial of Capt. Kazmierczak's tort claim, he is entitled to commence a lawsuit.

### III.    NAMES OF PERSONS INVOLVED

At this time, the following persons known to be involved include:  Mayor Duane Parry and Amber Lapaich-Stalbrink, Corporation Legal Counsel, and possibly Andrea Smith, Personnel Director and Chris Yagelski, Administrator.

### IV.    AMOUNT OF DAMAGES

Capt. Kazmierczak seeks an award of his damages and makes demand for the maximum amount allowed under Indiana's Tort Claim Act of Seven Hundred Thousand Dollars ($700,000), and asserts that every publication of defamatory information or casting him in a false light is a separate occurrence under the Act carrying with it up to a maximum of $700,000 for each occurrence.  Capt. Kazmierczak's potential damages include, but are not limited to the following losses: (a) income and wages of nearly $800 a month, (b) the value of a take-home vehicle, (c)  compensatory and punitive damages to be determined, (d) impact on his professional and personal reputation, (e) damages for humiliation and embarrassment, (f)  the ability to be compensated for accrued but unused vacation and sick benefits at a higher rate of reimbursement, (g) comp. time, (h) the negative impact on future professional development and promotions, and (i) the impact on him and his young family of four boys under twelve due to going from a flexible work schedule on Monday through Friday during normal working hours back to shift work and having to work weekends and holidays.  This list is not intended to be



Notice of Tort Claim
April 29, 2021
Page 15

exclusive or exhaustive and Capt. Kazmierczak reserves the right to seek and demand recovery of all damages available at law or equity.

## V.    RESIDENCE OF PERSON MAKING CLAIM

Capt. Kazmierczak's address is ███████████████████████.

## VI.    REQUEST FOR ISSUANCE OF MEDIA RETRACTION

Without waiving any right to other remedies or damages, Capt. Kazmierczak requests the City of Michigan City to immediately cause a correction and media retraction prominently placed on the first page of local media, including without limitation in the *La Porte County Herald Dispatch* and to further release the corrected statement to the AP Press (just as was done with the Initial Press Release), in the following form:

### ***FOR IMMEDIATE RELEASE***

**MAYOR DUANE PARRY REQUESTS ALL MEDIA OUTLETS TO PUBLISH THE FOLLOWING CORRECTION AND RETRACTION IN ALL MEDIA OUTLETS AND THE AP PRESS:**

**ON NOVEMBER 10, 2020 AND ON SEVERAL DATES THEREAFTER, VARIOUS MEDIA OUTLETS INACCURATELY REPORTED IN NUMEROUS ARTICLES THAT KYLE A. KAZMIERCZAK WAS FIRED FROM HIS POSITION AS DEPUTY FIRE CHIEF.  FURTHER, A PRIOR PRESS RELEASE BY MAYOR PARRY QUOTED BY SUBSEQUENT NEWS REPORTS INACCURATELY REFLECTED THAT KYLE A. KAZMIERCZAK HAD INFORMATION ABOUT AN OFF-DUTY INCIDENT BY FIRE FIGHTERS AND ALLEGEDLY MISHANDLED AN INVESTIGATION REGARDING THE INCIDENT.  ALL OF WHICH IS NOT ACCURATE.**

**TO CORRECT THE RECORD, KYLE A. KAZMIERCZAK WAS NOT TERMINATED NOR FIRED FROM THE MICHIGAN CITY FIRE DEPARTMENT AND MAYOR PARRY HAD NO GOOD NOR LAWFUL REASON, NOR LEGAL AUTHORITY, TO TAKE THE ACTION OF REMOVING KYLE A. KAZMIERCZAK AS DEPUTY CHIEF.  INDEED, THE LACK OF ANY KNOWLEDGE ON KAZMIERCZAK'S PART IS CONFIRMED BY THE FACT HE WAS NEVER INTERVIEWED BY THE CITY OR POLICE ABOUT THE INCIDENT.**



Notice of Tort Claim
April 29, 2021
Page 16

**FURTHER, NO EVIDENCE EXISTED THAT AS OF NOVEMBER 10TH KYLE A. KAZMIERCZAK HAD ANY DETAILED KNOWLEDGE OF WHAT ACTUALLY TRANSPIRED ON NOVEMBER 5TH BETWEEN OFF-DUTY FIREFIGHTERS AT A PRIVATE RESIDENCE AND MAYOR PARRY ACKNOWLEDGES HE HAD NO INFORMATION PROVING OTHERWISE. AS OF NOVEMBER 6, 2020, THE INDIANA STATE POLICE INSTRUCTED THE FIRE CHIEF AND KYLE A. KAZMIERCZAK THAT THE STATE POLICE HAD ASSUMED JURISDICTION OVER THE OFF-DUTY INCIDENT AND THE MICHIGAN CITY FIRE DEPARTMENT WAS IMMEDIATELY RESTRICTED FROM CONDUCTING ITS OWN INVESTIGATION. CONSEQUENTLY, IT WAS WRONG TO STATE, PUBLISH AND IMPLY THAT GROUNDS EXISTED TO CONCLUDE MISHANDLING OF THE OFF-DUTY INCIDENT. MOREOVER, THE INCIDENT HAD ALREADY IMMEDIATELY BEEN DIRECTLY REPORTED TO MCPD ON THE DAY OF THE EVENT, THE MCPD HAD REPORTED IT TO THE INDIANA STATE POLICE AND THE STATE POLICE HALTED AND DIRECTED THAT NO INVESTIGATION SHOULD BE UNDERTAKEN AS OF NOVEMBER 6, 2020.**

**MR. KAZMIERCZAK CONTINUES TO BE EMPLOYED AND HOLD THE RANK OF CAPTAIN WITH THE FIRE DEPARTMENT. MR. KAZMIERCZAK HAS PROUDLY SERVED HIS COMMUNITY FOR OVER 21 YEARS, AND THE CITY THANKS HIM FOR HIS DEVOTED SERVICE. THE CITY ADMINISTRATION APOLOGIZES FOR THE IMPACT THE PRIOR INCORREC T NEWS STORIES HAVE HAD ON KYLE A. KAZMIERCZAK AND HIS FAMILY.**

### V.    PRESERVATION OF EVIDENCE REQUEST

We have reason to believe that you or your office may have knowledge, documents and/or other evidence concerning the above-referenced events and facts. This letter is a formal request for your office to institute a litigation hold as to any and all documents and/or electronically stored information as follows: any and all information relating to the above-referenced events and facts, the Press Release, communications and information gathered about the incident referenced in the Press Release, about Lt. Krivak or Capt. Kazmierczak, documents and communications relating to the Mayor's decision to remove Lt. Krivak and Capt. Kazmierczak from their leadership positions in the Michigan City Fire Department, documents and communications received from others relating to the incident or press release concerning Capt. Kazmierczak, and documents and communications relating to information provided to the media (hereinafter the "Subject Matter").

**katz.korin.**
**cunningham.**

Notice of Tort Claim
April 29, 2021
Page 17

In accordance with this request to institute a litigation hold, we demand that you immediately suspend the deletion, overwriting, alteration, or any other destruction of electronically stored information ("ESI") that is or may be relevant to the Subject Matter of the anticipated litigation or likely to lead to discoverable information. ESI includes, but is not limited to, any and all of the following: electronic mail and electronic communications of all types, data and information about electronic mail and other electronic communications, text messages, data and information about text messages, databases, database field information, computer log activity, word processing files and fragments, spreadsheet files and fragments, database files and fragments, electronic data generated by computer software, electronic data stored on any computer, hidden files and metadata. Please preserve ESI wherever located including, but not limited to, on computers, laptops, digital storage devices, servers, discs and drives of any type, backups, online storage and/or offline storage, whatever its form or format. We further demand that you ensure the preservation of all hard copies of documents and information relating to the Subject Matter. Finally, preservation is a continuing duty. Please ensure that the preservation of information extends to hard copies and ESI that is generated and/or received after the receipt of this letter.

Please take all steps necessary to ensure that the sources of information relevant to the Subject Matter are located, and that the information therein is preserved, wherever located. Finally, please ensure that all necessary persons are notified of the need to preserve information related to the Subject Matter, and that a litigation hold is fully implemented.

All future communications regarding this matter shall be directed to my attention. Thank you for your prompt attention in this regard. Please contact me if you would like discuss pre-litigation settlement options.

Sincerely,

Kristopher N. Kazmierczak



**Kristopher N. Kazmierczak**
kkaz@kkclegal.com
Direct: 317-615-4230

## NOTICE OF TORT CLAIM

February 10, 2022

| | |
|---|---|
| **Via Email** ▮▮▮▮▮▮▮▮▮▮▮▮), and **Certified Mail** <br> Article # 9314 8699 0430 0091 7736 89 <br><br> Hon. Mayor Duane Parry <br> Mayor's Office <br> 100 East Michigan Boulevard <br> Michigan City, IN 46360 | **Via Certified Mail** <br> Article # 9314 8699 0430 0091 7739 31 <br><br> Political Subdivision Risk <br> Management Commission <br> 311 W. Washington St, Suite 103 <br> Indianapolis, IN 46204 |
| **Via Email** ▮▮▮▮▮▮▮▮▮▮), **and Certified Mail** <br> Article # 9314 8699 0430 0091 7740 37 <br><br> Amber Lapaich-Stalbrink <br> Corporation Counsel <br> 100 East Michigan Boulevard <br> Michigan City, IN 46360 | **Via Certified Mail** <br> Article # 9314 8699 0430 0091 7740 99 <br><br> Michigan City Common Council <br> Council Chambers, City Hall <br> 100 E. Michigan Boulevard <br> Michigan City, IN 46360 |
| **Via Certified Mail** <br> Article # 9314 8699 0430 0091 7741 98 <br><br> Kim Silwa <br> Michigan City Human Resources <br> 100 East Michigan Boulevard <br> Michigan City, IN 46360 | |

Re:    *Supplemental/Second Notice of Tort Claim for Kyle A. Kazmierczak*

To Whom It May Concern:

As you are aware from the prior Tort Claim Notice I served on you, with the exception of Ms. Silwa, on or about April 29, 2021 ("April 2021 Notice") which went totally unanswered and uncorrected, our firm represents Kyle A. Kazmierczak. Kyle formerly served Michigan City for twenty-one (21) years as a fire-fighter and last held the rank of Captain. Unfortunately, the City and its administration has not, to date, retracted, rectified or addressed the false statements publicly made about Kyle and his profession, in spite of the notice of his tort claim and risk of upcoming legal action, nor has the City, or its insurance carrier, responded to the April 2021 Notice.

**Attorneys at Law**

**Address**
334 N. Senate Ave.
Indianapolis, IN 46204

**Contact**
Main   317 464 1100
Fax    317 464 1111

**kkclegal.com**



The April 2021 Notice informed the Mayor, the City and their administration that Kyle had suffered damages and would continue to suffer damages as a result of their unlawful acts. Indeed, it specifically stated that if the public and employment related statements and information were not immediately corrected and rectified Kyle would suffer future damages, including the negative impact on Kyle's professional reputation, development and promotions.

As you are abundantly aware, the on-going and continued wrongful and unlawful actions of the Mayor, City and their administration resulted in Kyle considering other options to his dream job of being a firefighter for his hometown and the attendant pride to himself and his family, unwillingly sacrificing his years of devoted service, future promotion and professional growth opportunities, personal relationships on the department, short and long-term benefits, training and outside work opportunities, and on-and-on. Accordingly, Kyle found a non-municipal firefighter position. He applied for it and was selected conditioned upon a check of his references and employment history.

Unbelievably, despite the ample notice given to the Mayor, City and their administration of the damage already done to Kyle's reputation and profession, the Mayor's office, City and the administration doubled-down and committed one of the most serious offenses by an employer. Instead, of acting lawfully and professionally, Michigan City through its employees and agents interfered with Kyle's prospective employment opportunities. Michigan City unjustifiably and unlawfully interfered with and misrepresented Kyle's employment history to his prospective employer. Specifically, on or about August 16, 2021, the prospective employer requested Michigan City to confirm very basic information, including the start date, end date, and position, and specific duties. Rather than do as every other reasonable employer and at minimum provide neutral standard responses, Kim Silwa, individually, and believed to be at the direction of others, intentionally offered information that was not requested, was misleading or outright refused to provide requested information.

Even though Kyle had an exceptional career and fulfilled his duties in an honorable and competent fashion, the City did not accurately report Kyle's employment history.

On August 18, 2021, Ms. Silwa provided the following misleading and improper responses to a basic and routine employer inquiry:

Position: Presently ???  Captain with the Michigan City Fire Department

What were the subject's duties: **Would not specify**.
How would you rate the subject's performance: **Would not specify**.
Rate how they followed the company safety guidelines: **Would not specify**.
Rate their attendance:  **Would not specify**.



Notice of Tort Claim
February 10, 2022
Page 3

There was absolutely no need to invite the question of "presently", and the intent for doing so is clear. The obvious reason for an experienced human resources employee to answer in this deliberate way is to have the applicant's employment background flagged. Put differently, to interfere with an applicant's job offer – which is exactly what was done here. What else is odd, is that Ms. Silwa was assigned to provide this particular information, not the City Attorney given the tort claim exposure and related notice of potential legal exposure, and not the City's designated Human Resources Director where employment history/background inquires are normally directed.

This move is so out of the ordinary it is obviously deliberate and with callous disregard to Kyle's employment and profession rights. It should be kept in mind that we had previously warned about the negative impact the false information about Kyle's removal, or as the City publicly stated his "termination", from his former position as Deputy Chief would have on him into the future, particularly if it went uncorrected. Yet, Michigan City took the injury previously done to Kyle to another level by actively participating in negatively impacting his reputation, profession and future employment opportunities in further perpetuating the false narrative about Kyle's employment history with the City. Thus, Kyle continues to suffer injury and damages to his professional reputation due to the acts of the Mayor, City and their administrative staff and employees, including Kim Silwa.

## II.    TORT CLAIMS

Although embodied in the prior April 2021 Notice, and part of a continuing wrong, Kyle is not required to provide this additional notice, but does so to supplement his prior tort claim notice, or as an additional tort claim notice. Accordingly, Kyle hereby gives notices of his tort claims in connection his legal claims against the City of Michigan City, Mayor Duane Parry, their employees or agents and/or other governmental entities, and Kim Silwa who are or may be responsible for all, or a portion of, the damages and injuries sustained by Kyle. This correspondence constitutes and is intended to provide you with Kyle's supplemental or additional Notice of Tort Claim pursuant to Indiana Code § 34-13-3-8. Pursuant to Indiana Code § 34-13-3-10, this Notice is intended to comply with that notice requirement for events occurring on November 6, 2020, and continuing thereafter, including the aforementioned acts on August 18, 2021.

Kyle gives notice of all of his tort claims available to him under Indiana law. The following expression of the example of tort claims are not intended to be exhaustive or to the exclusion of others and Kyle reserves his right to bring all claims, including those sounding in tort or otherwise, or arising under Federal or Indiana law. Among other possible tort claims, Kyle gives notice of claims for defamation, false light, tortious interference with terms of employment contract, tortious interference with prospective business advantage, and tortious interference with contract.



### III.    NAMES OF PERSONS INVOLVED

At this time, the following person is known to be involved: Kim Silwa.  It is also reasonably believed that other involved persons may include Mayor Duane Parry, Amber Lapaich-Stalbrink, Corporation Legal Counsel, and Andrea Smith, Director of Human Resources/Personnel Director.

### IV.    AMOUNT OF DAMAGES

Kyle seeks an award of his damages and makes demand for the maximum amount allowed under Indiana's Tort Claim Act of Seven Hundred Thousand Dollars ($700,000), and asserts that every publication of defamatory information, act of interference or casting him in a false light causing an injury is a separate occurrence under the Act carrying with it up to a maximum of $700,000 for each occurrence.  Kyle reserves the right to seek and demand recovery of all damages available at law or equity.

### V.    RESIDENCE OF PERSON MAKING CLAIM

Kyle's address is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, ▮▮▮▮▮▮.

All future communications regarding this matter shall be directed to my attention. Thank you for your prompt attention in this regard.  Please contact me if you would like discuss pre-litigation settlement options.

Sincerely,

Kristopher N. Kazmierczak